UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 04-_____CIV-MARRA

05 - 61 55 CIV-ZLOCH

Proceeding Ancillary to Case No. 03-80612-CIV-MARRA/VITUNAC

COURT APPOINTED RECEIVER of LANCER
OFFSHORE, INC. and OMNIFUND, LTD.,

Plaintiff,

vs.

THE CITCO GROUP LTD. CITCO FUND
SERVICES (CURACAO) N.V., AND CITCO
ACCEPTANCE CORPORATION,

Defendants.
_____/

**NIGHT BOX FILED**

JAN 1 1 2005

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

## COMPLAINT

Plaintiff Marty Steinberg, (the "Receiver") court-appointed Receiver for Lancer Management Group LLC, Lancer Management Group II LLC, Lancer Offshore Inc., Omnifund Ltd., LSPV Inc., LSPV LLC, Alpha Omega Group Inc., and G.H. Associates LLC[1], through undersigned counsel, hereby sues Defendants, The Citco Group, Ltd. ("The Citco Group"), Citco Fund Services (Curacao), N.V. ("Citco N.V.") and Citco Acceptance Corporation ("CAC" and collectively with The Citco Group and Citco N.V. referred to as "Citco" or the "Defendants" and each individually a "Defendant"), and alleges as follows:

### I. THE PARTIES

**A.  The Plaintiff**

1.  The Receiver is a citizen of the State of Florida.

---

[1] Lancer Management Group LLC, Lancer Management Group II LLC, Lancer Offshore Inc., Omnifund Ltd., LSPV Inc., LSPV LLC, Alpha Omega Group Inc., and G.H. Associates LLC are referred to collectively as the "Receivership Entities".



2. On July 8, 2003, the Securities and Exchange Commission filed in this Court a Complaint for Injunctive and Other Relief against Michael Lauer, Lancer Management Group LLC, Lancer Management Group II LLC, Lancer Offshore Inc., Lancer Partners L.P., Omnifund Ltd., LSPV Inc., and LSPV LLC, initiating Case No. 03-80612-CIV-MARRA (the "Receivership Case").

3. On July 10, 2003, this Court entered an Order Appointing Receiver (the "Receivership Order") in the Receivership Case, which, among other things, placed Lancer Management Group LLC, Lancer Management Group II LLC, Lancer Offshore Inc., Omnifund Ltd., LSPV Inc., and LSPV LLC under the auspices of the Receiver.

4. Paragraph 1 of the Receivership Order directs the Receiver to "[t]ake immediate possession of all property, assets and estates of every kind of [the Receivership Entities] … including, but not limited to … stocks, bonds, debentures and other securities … and to administer such assets pending further order of this Court … "

5. Paragraph 2 of the Receivership Order directs the Receiver to:

> Investigate the manner in which the affairs of Lancer, Lancer II, Offshore, Omnifund, Offshore LSPV, and Partners LSPV were conducted and institute such actions and legal proceedings, for their benefit and on their behalf, and on behalf of the Funds' investors and other creditors, as the Receiver deems necessary … against any transfers of monies or other proceeds directly or indirectly traceable from investors in the Funds; provided such actions may include … recovery and avoidance of fraudulent transfers under Florida Statute § 726.101, et seq. or other state law…

6. On September 3, 2003, the Court entered an Order expanding the terms of the Receivership Order to include Alpha Omega Group Inc. and G.H. Associates LLC.

2

7. This Complaint is ancillary to Case No. 03-80612-CIV-ZLOCH pursuant to Article IX of the Court's Case Management Order dated January 8, 2004 in Case No. 03-806120-CIV-ZLOCH.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 754 and 1692 and pursuant to Article IX of the Court's Case Management Order dated January 8, 2004 in Case No. 03-806120-CIV-ZLOCH.

9. The Plaintiff and the Receivership Entities have their principal place of business at 1111 Brickell Avenue, Suite 2500, Miami, Florida.

**B.     The Defendants**

10. The Citco Group is a holding company that operates through numerous subsidiaries. The Citco Group does not earn any revenue independent of the revenue generated by its subsidiaries, and it serves as the vehicle by which its operating subsidiaries procure business from and conduct extensive fund management services for funds operated from within the United States and around the world.

11. The Citco Group's principal place of business is at Corporate Centre, West Bay Road, Grand Cayman, Cayman Islands-British West Indies.

12. Upon information and belief, CAC's principal place of business is at West Bay Road, Grand Cayman, Cayman Island-British West Indies. At all relevant times, CAC utilized West Bay Road, P.O. Box 31106-SMB, Grand Cayman, Cayman Island as the address for the receipt of payments from The Receivership Entities.

13. Upon information and belief, CAC is an affiliate of Citco N.V. and The Citco Group.

14. The Citco Group maintains offices throughout the United States ("Citco USA"), including two offices in Miami and one in Ft. Lauderdale. In serving the interests of its operating subsidiaries, The Citco Group and its immediate subsidiaries conduct extensive business, administrative and marketing operations within the United States and the Southern District of Florida.

15. The Citco Group also maintains offices outside the United States and around the world, including offices in Curacao.

16. Citco N.V. is the Curacao-based operating subsidiary of The Citco Group. It is a business entity organized and existing under the laws of the Netherlands Antilles, having places of business at Kaya Flamboyan 9, P.O. Box 812, Curacao, Netherlands Antilles and Citco Building, Wickams Cay, Road Town, Tortola, British Virgin Islands.

17. Citco N.V. performs extensive fund management services for funds operated from the United States.

18. Citco N.V. performed services for Offshore and OmniFund while those funds were operated and managed by Lauer and Lancer from executive offices located in New York City and Connecticut.

19. Citco N.V. is the largest division of the Citco Fund Services group. Citco N.V. provides full service administration to 205 funds, totaling $44.9 billion in assets and employs 115 people.

20. Citco USA and Citco N.V. hold themselves out as offices of The Citco Group. Indeed, on The Citco Group's website (*http://www.citco.com/locations.jsp*), both Citco USA and Citco N.V. are listed as offices of the Citco Group network. All of The Citco Group's subsidiaries, divisions, and offices are referred to throughout the website only as "Citco."

21. The Citco Group holds its network of subsidiaries out as the world's top providers of hedge fund administration services. The Citco Group claims that its wholly owned operating subsidiaries administer more than 1,000 funds worldwide, allegedly representing a combined net asset value of more than $110 billion.

22. The Citco Group represents that its operating subsidiaries combined constitute a "global fund administrator" and that its operating subsidiaries' ability to administer funds in offices throughout the world renders the combined enterprise able to provide a "consistent service platform."

23. The Citco Group asserts that its operating subsidiaries allow their personnel "the ability to transfer between offices and divisions" in order to maintain consistent levels of performance worldwide.

24. Substantially all information regarding hedge funds administered by any of The Citco Group's offices is maintained in a centralized database that can be accessed by the fund manager. Indeed, the Citco website (*http://www.citco.com/funds/services_online.htm*) touts: "This online reporting service is available to Fund Managers of Funds administered by *any* of the Citco Fund Services offices." (Emphasis added).

25. The Citco Group's website also contains a brochure that describes a sophisticated, integrated computer system containing all client information that is located in Fort Lauderdale:

> Citco's dedicated Information Technology Group, based in Fort Lauderdale, Florida is responsible for maintaining and monitoring all software and hardware configurations, and network support. The group also maintains Citco's exclusive database of security information (CDS Citco Data Source), providing prices and corporate actions for US and non-US securities, with integrated cross-reference identification codes, using multiple vendors such as Interactive Data Corporation (IDC), Reuters, Bloomberg and Telekurs. Each office is set up with a dedicated team of on-site IT staff to monitor daily operations and tailor needs of our clients.

5

*See http://www.citco.com/funds/CitcoFundServicesBrochure.pdf.*

26. In addition, Citco USA maintains a sophisticated, trademarked software system called "Ephesus," which has "fully integrated general ledger capabilities . . .." This software system includes "an order entry and order acceptance based system to process subscriptions, redemptions (including cash tracking), transfers and switches," and a sophisticated intranet. This software is available to and used by the rest of The Citco Group's entities around the world, including Citco N.V.

27. The managing director of each office of The Citco Group that provides fund administration services – including Citco N.V. – reports to William Keunen ("Keunen"), the Director of Fund Services for The Citco Group. Keunen, in turn, reports to the four person executive committee for The Citco Group.

28. Keunen is an officer of Citco USA and is resident in Citco USA's Miami office.

## II. JURISDICTION AND VENUE

29. This Court has original, ancillary and/or supplemental subject matter jurisdiction over all claims at issue in this action pursuant to, *inter alia*, 15 U.S.C. § 78aa, 28 U.S.C. §§ 754, 1367, and 1692 and the doctrines of pendant and ancillary jurisdiction.

30. This Court has general personal jurisdiction over each of the Defendants under Florida Statutes § 48.193(2) and the United States Constitution by virtue of the Defendants' substantial, continuous and regular contacts with the United States and the Southern District of Florida.

31. Alternatively, this Court has specific personal jurisdiction over each of the Defendants under Florida Statutes § 48.193(1) and the United States Constitution by virtue of the Defendants' participation in the grossly negligent management and breaches of duty committed

by the insiders of The Offshore Funds, which breaches occurred in the United States and the Southern District of Florida.

32. Further, this Court has personal jurisdiction over all of the Defendants under the Florida Long-Arm Statute by virtue of The Citco Group's substantial, continuous and regular contacts with the United States and the Southern District of Florida, which contacts may be imputed to Citco N.V. because of The Citco Group's exclusive role as Citco N.V.'s agent in the United States.

33. Finally, this Court has personal jurisdiction over each of the Defendants pursuant to the nationwide service of process allowed under 28 U.S.C. §§ 754 and 1692 and the Defendants' substantial and pervasive economic contacts with the United States.

34. Venue is proper before this Court pursuant to 28 U.S.C. § 1409. Additionally, venue is proper in this Court pursuant to 28 U.S.C. §§ 754 and 1692.

### III. BACKGROUND FACTS

**A.   The Receivership Entities**

35. Michael Lauer ("Lauer") was the founder, sole manager, and principal owner of the Management Companies and Funds.

36. In 1993, Lauer formed a New York limited partnership which he eventually named Lancer Partners, L.P. under the laws of the State of New York.

37. In November, 1997, Lauer formed Lancer Partners L.P. as a limited partnership under the laws of the State of Connecticut and he merged the two partnerships.

38. Lancer Management Group II ("LMG II") managed Partners and is its general partner.

39. Lancer Offshore Inc. ("Offshore") is a British Virgin Islands ("BVI")

international business company incorporated in September 1995.

40. Lancer Management Group LLC ("LMG") managed Offshore.

41. Omnifund Ltd. ("Omnifund") is a BVI international business company originally incorporated in January 1999 as The Orbiter Fund, Ltd. ("Orbiter").

42. Omnifund is the successor to the March 2002 merger of Orbiter and The Viator Fund, Ltd. ("Viator")[2], another BVI international business company incorporated in September, 1999.

43. LMG was also Omnifund's investment manager.

44. Upon information and belief, Alpha Omega Group, Inc. is a corporation incorporated under New York law in 1999.

45. Upon information and belief, G.H. Associates LLC, is a limited liability company organized under new York law in 1997.

## B. Lauer's Conduct

46. At all times relevant to this Complaint, Lauer inflated the stated net asset value of the Funds' portfolio holdings by engaging in manipulative trading of certain of the portfolio holdings on the public markets and by assigning bogus valuations to certain of the portfolio holdings not traded on the public markets.

47. These inflated net asset values in turn inflated the fees payable to Lauer, induced new investors to deposit additional funds into the Funds, and induced existing investors to maintain their investments in Partners.

48. At all times relevant to this Complaint, Lauer lost money on many of the investments he chose for the Funds.

---

[2] Offshore and Omnifund (as successor to Orbiter and Viator) are referred to collectively as the "Offshore Funds."
The Offshore Funds are sometimes referred to collectively with Partners as the "Funds."

49. At all times relevant to this Complaint, Lauer operated the Receivership Entities as a Ponzi scheme by satisfying redemption requests made by investors with deposits made by subsequent investors rather than with profits from trading activities.

50. At all times relevant to this Complaint, the Funds continued to honor redemption requests submitted by investors seeking to cash out the "profits" apparent from the artificially inflated net asset values of the Funds' holdings.

### C. The Transfers at Issue

51. Lauer caused the Offshore Funds to make transfers (the "Transfers") to the Defendants as detailed on the attached Exhibit "A", which is incorporated herein by reference.

52. Upon information and belief, some of the moneys transferred to each of the Defendants may have been dissipated.

53. Upon information and belief, as of the time of the filing of this action, additional property transferred to each of the Defendants may still be in his/her possession or control.

54. Accordingly, the Receiver hereby sues each of the Defendants to recover the Transfers and all other transfers by any of the Receivership Entities to each of the Defendants.[3]

### COUNT I
### ACTUAL FRAUDULENT TRANSFER
### Fla. Stat. §§ 726.105(1)(a) and 726.108

55. The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 54 above.

---

[3] Exhibit A does not include any Transfers subsequent to December 31, 2001. Plaintiff believes Defendants received additional Transfers from the Offshore Funds after December 31, 2001, but does not have records of such Transfers in his possession at this time. When such records become available to Plaintiff, Plaintiff intends to amend this Complaint to include all Transfers from the Receivership Entities to or to the benefit of the Defendants including all Transfers after December 31, 2001.

56. The Offhsore Funds made the Transfers identified in Exhibit A to or for the benefit of the Defendants on the dates specified in Exhibit A.

57. Lauer caused The Offshore Funds to make each of the specified Transfers to the respective Defendants with the actual intent to hinder, delay, and defraud the creditors of The Offshore Funds.

**WHEREFORE**, the Receiver demands judgment against the Defendants, in the total amount of all Transfers received by each Defendant, including those detailed in the attached and incorporated Exhibit "A", together with prejudgment interest from the date of each of the Transfers, costs, all the relief set forth in Fla. Stat. § 726.108 and any further relief that this Court deems just, fair, and equitable.

## COUNT II
## CONSTRUCTIVE FRAUDULENT TRANSFER
## Fla. Stat. §§ 726.105(1)(b) and 726.108

58. The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 54 above.

59. The Offhsore Funds made the Transfers identified in Exhibit A to or for the benefit of the Defendants on the dates specified in Exhibit A.

60. The Offshore Funds did not receive reasonably equivalent value in exchange for the Transfers made to the Defendants.

61. The Offshore Funds were insolvent at the time each of the Transfers was made.

62. The net assets of The Offshore Funds were unreasonably small in relation to each of the Transfers.

63. At the time the Transfers were made to or for the benefit of the Defendant, Lauer knew that The Offshore Funds were insolvent, and that The Offshore Funds would not be able to satisfy their liabilities as they came due.

64. At the time each of the Transfers was made to or for the benefit of the Defendant, The Offshore Funds were engaged in, or were about to engage in, a business or a transaction for which the remaining assets of The Offshore Funds were unreasonably small in relation to the business or transaction.

65. At the time the Transfers were made to or for the benefit of the Defendants, Lauer knowingly caused The Offshore Funds to incur, or reasonably should have known that The Offshore Funds would incur, debts beyond their respective ability to pay as they came due.

**WHEREFORE**, the Receiver demands judgment against the Defendants, in the total amount of all Transfers received by each Defendant, including those detailed in the attached and incorporated Exhibit "A", together with prejudgment interest from the date of each of the Transfers, costs, all the relief set forth in Fla. Stat. § 726.108 and any further relief that this Court deems just, fair, and equitable.

## COUNT III
## <u>CONSTRUCTIVE FRAUDULENT TRANSFER</u>
### Fla. Stat. §§ 726.106(1) and 726.108

66. The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 54 above.

67. The Offhsore Funds made the Transfers identified in Exhibit A to or for the benefit of the Defendants on the dates specified in Exhibit A.

68. The Offshore Funds did not receive reasonably equivalent value in exchange for the Transfers made to the Defendants.

69.     The Offshore Funds were insolvent at the time each of the Transfers was made, or became insolvent as a result of each of the Transfers.

**WHEREFORE**, the Receiver demands judgment against the Defendants, in the total amount of all Transfers received by each Defendant, including those detailed in the attached and incorporated Exhibit "A", together with prejudgment interest from the date of each of the Transfers, costs, all the relief set forth in Fla. Stat. § 726.108 and any further relief that this Court deems just, fair, and equitable.

### COUNT IV
### UNJUST ENRICHMENT

70.     The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 54 above.

71.     The Defendants have been unjustly enriched at the expense of The Offshore Funds, by receiving the Transfers.

72.     It would be inequitable to permit the Defendants to retain the benefit of the Transfers, because all of the Transfers consisted of other investors' misappropriated capital contributions to The Offshore Funds.

73.     Additionally, it would be inequitable to permit the Defendants to retain the benefit of the Transfers, because The Offshore Funds did not receive reasonably equivalent value in exchange for the Transfers.

74.     The Defendants are not entitled to retain the Transfers they received because the Transfers were obtained from The Offshore Funds as a result of Lauer's misconduct.

75.     It would be inequitable to permit the Defendants to retain the benefit of the Transfers they received at the expense of The Offshore Funds and other investors in and creditors of The Offshore Funds.

**WHEREFORE**, the Receiver demands judgment against the Defendants, in the total amount of all Transfers received by each Defendant, including those detailed in the attached and incorporated Exhibit "A", together with prejudgment interest from the date of each of the Transfers, costs, and any further relief that this Court deems just, fair, and equitable.

Dated: January 11, 2005

**HUNTON & WILLIAMS LLP**
*Attorneys for the Receiver*
1111 Brickell Avenue
Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Telecopier: (305) 810-2460

By: _____
Craig V. Rasile (FBN 613691)
Jeffrey P. Bast (FBN 996343)
Andrew D. Zaron (FBN 965790)

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Court Appointed Receiver of Lancer Offshore, Inc. and Omnifund, Ltd.

CIV-ZLOCH

**DEFENDANTS**
The Citco Group Ltd., Citco Fund Services (Curacao) N.V., and Citco Acceptance Corporation

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **MAGISTRATE JUDGE**
(EXCEPT IN U.S. PLAINTIFF CASES) **SNOW**

05-60055

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**FILED**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jeffrey P. Bast, Esq.
Hunton & Williams LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131     Tel: 305-810-2562

ATTORNEYS (IF KNOWN)

JAN 11 2005

CLARENCE MADDOX

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, (BROWARD,) PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS/FTL

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

05CV60055-Zloch-Snow

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | A PROPERTY RIGHTS | B☐ 450 Commerce/ICC Rates/etc. |
| ☒ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | PERSONAL PROPERTY | B☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | A LABOR | B SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| A REAL PROPERTY | A CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | B☐ 540 Mandamus & Other | A☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This is an action under 28 U.S.C. §§ 754, 1367 and 1692 to recover fraudulent transfers and for unjust enrichment in a proceeding ancillary to a federal receivership.

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ in Excess of $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S)** (See instructions):
**IF ANY**     JUDGE  Judge Kenneth A. Marra     DOCKET NUMBER  03-80612-CIV-MARRA

DATE  1/11/05
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # 532 935  AMOUNT 150   APPLYING IFP ___  JUDGE ___  MAG. JUDGE ___

JS 44 Reverse
(Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.  (a) **Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

V.  **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.