UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60055-CIV-MARRA/JOHNSON

COURT-APPOINTED RECEIVER OF
LANCER OFFSHORE, INC. AND
OMNIFUND, LTD.

    Plaintiffs
vs.

THE CITCO GROUP LTD,
CITCO FUND SERVICES (CURACAO)
N.V., AND CITCO ACCEPTANCE
CORPORATION

    Defendants.
_____/

**ORDER AND OPINION GRANTING MOTION TO DISMISS**

THIS CAUSE is before the Court upon The Citco Group Limited's Motion to Dismiss the Receiver's Third Amended Complaint For Fraudulent Transfer [DE 165]. The motion is fully briefed and ripe for review. The Court has carefully considered the motion, response, and reply, and is otherwise fully advised in the premises.

**Introduction and Background**

On February 12, 2010, the Receiver filed his Third Amended Complaint ("TAC") [DE 152] attempting to cure the pleading deficiencies found to exist in his prior complaints. In the TAC, the Receiver alleges three counts of fraudulent transfer and one count for unjust enrichment against, among others, The Citco Group Limited ("CGL"), Citco Fund Services (Curacao) N.V. ("CFS-Curacao") and Citco Acceptance Corporation ("CAC"). The claims relate to alleged overpayments of administrative

fees and directors' fees for services performed for the two hedge funds at issue in this action, Lancer Offshore, Inc. and The OmniFund Ltd. (collectively, the "Offshore Funds"). CGL moves to dismiss the TAC for the following purported defects:

- It fails to state a direct claim under FUFTA against CGL.
- It fails to state a claim for unjust enrichment against CGL.
- It fails to allege a basis for secondary or vicarious liability against CGL.

**Standard of Review**

For purposes of deciding a motion to dismiss, the Court accepts the allegations of the Receiver's TAC as true and views the facts in the light most favorable to him. *See, e.g., Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000). A plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1950, (2009)). "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th

Cir. 2001) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981)).

**Discussion**

I.      **Direct Claim Under FUFTA**

CGL asserts that the Receiver's three fraudulent transfer counts asserted against it should be dismissed because CGL is not a transferee under FUFTA.  While the Receiver concedes that CGL cannot be held liable as an initial transferee of the allegedly avoidable transfers, because each of the transfers at issue were paid to, and received by, either CFS-Curacao or CAC, he purports to assert direct liability claims against CGL "on the basis that (a) [CGL] is the party for whose benefit the initial transfers were made; [and] (b) it is a subsequent transferee." TAC ¶¶ 1, 4-5, 65, 229-30, 239-40, 245-46.  CGL argues that the Receiver does not, and cannot, plead any factual allegations that would substantiate his purely legal conclusion that CGL was a subsequent transferee or that the transfers to CFS-Curacao or CAC were for CGL's benefit.

*Subsequent Transferee*

CGL asserts that although the Receiver makes the conclusory assertion that it "is a subsequent transferee" (TAC ¶¶ 4-5), the TAC is devoid of any factual allegations alleging that CFS-Curacao or CAC transferred to CGL any portion of the funds they initially received from the purportedly fraudulent transfers.  The Receiver admits that he cannot "pinpoint dates and amounts of subsequent transfers," but

argues that he should be permitted to conduct discovery to obtain details, especially when the facts are in the control of the opposing party or within the opposing party's knowledge, as they are here.  The Receiver also asserts that by pleading facts describing the relationship between CFS-Curacao, CAC and CGL, he sets forth the basis for his belief that for each transfer, one of the entities was either the initial transferee, the entity for whose benefit the transfer was made, or the subsequent transferee.  *See* DE 174, at 9 of 25.

These arguments improperly seek to circumvent the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A similar argument was rejected by this Court in *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*  No. 00-06410-CIV-MARRA, 2008 WL 2245726, *2 (S.D. Fla. May 29, 2008), where the Court stated that by relaxing the pleading standard, "the Court would be impermissibly allowing Plaintiffs to pursue discovery to find out if a fraudulent transfer claim exists."  *Id*.

*Transfer Made for CGL's Benefit*

CGL also argues that the Receiver makes the conclusory allegation that CGL was the "party for whose benefit" the transfers at issue were made, without making any supporting factual allegations.  The Receiver responds that he

> alleges that each of the Citco Entities either received the transfer or the benefit of the Administration Fees.  With respect to [CGL], these fees are directly linked to the placement of its own Director of International Fund Services Anthony Stocks ("Stocks") to serve as a director of the Offshore Funds in exchange for the Director Fees.  Compl., ¶ 138.

> Because the Offshore Funds did not pay either Stocks or [CGL] for Stock's 'service' as a director, it is a fair inference that the payments, which were made to either [CFS-Curacao] or CAC, were for the Citco Group's benefit.

DE 174 at 10 of 25.  The Court does not agree with the Receiver's "fair inference." The Receiver is suggesting that because the Offshore Funds did not pay Stocks or CGL for Stocks' services, CGL directly or indirectly benefitted from payments that were made to either CFS-Curacao or CAC.  TAC ¶ 138.  This is not a reasonable or plausible inference.  Regardless, whether as an alleged subsequent transferee or as the alleged recipient of a benefit, no *factual* allegations as to the nature of the transfer are made.  Without identifying a transfer, there can be no benefit conferred.  In *re TOUSA, Inc.*, -- B.R. --, 2011 WL 522008, *47-48  (S.D. Fla. Feb. 11, 2011) ("'for whose benefit' language does not apply where the 'benefit' is not the immediate and necessary consequence of the initial transfer, but flows from the manner in which the initial transfer is used by its recipient - the 'benefit must derive directly from the [initial] transfer, not from the use to which it is put by the transferee.'")  Nor is it enough for the Receiver to simply presume that, as the parent company, CGL received a benefit from the Administrative Fee payments made to its subsidiaries. *See, e.g., In re Life Fund 5.1 LLC,* No. 10 A 42, 2010 WL 2650024, at *5 (Bankr. N.D. Ill. June 30, 2010).  Thus, the Receiver's allegations that CGL is a "financial services holding company" and that it "does not earn any revenue independent of the revenue generated by its subsidiaries" (TAC ¶¶ 16, 17), does not suggest that CGL received a

benefit from the fact that its subsidiary, CFS-Curacao, earned revenues from the administrative services it performed for the Offshore Funds.

As with his subsequent transferee theory, the Receiver contends that he should be permitted to take discovery before being required to set forth any factual basis for his legal conclusion that CGL was the entity for whose benefit the transfers were made. Since the TAC does not make any factual allegations that might raise a reasonable expectation that discovery would reveal evidence in support of his claims, the Court will not allow the Receiver to pursue discovery to find out if a fraudulent transfer claim exists. *Perlman v. Five Corners Investors I, LLC*, 2010 WL 962953, *2 (S.D. Fla. March 15, 2010).

Because the Receiver only makes the conclusory allegation that CGL was a subsequent transferee, or alternatively, was the party for whose benefit the transfers at issue were made, the TAC fails to state a claim under FUFTA, Fla. Stat. § 726.109. *See In re Wiand*, 2008 WL 818509, at *7 (M.D. Fla. Jan. 28, 2008); *Twombly*, 550 U.S. at 555.

**2.     Unjust Enrichment**

The parties agree the elements of an unjust enrichment cause of action are: (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Peoples Nat.*

*Bank of Commerce v. First Union Nat. Bank of Florida*, 667 So.2d 876 879 (Fla. Dist. Ct. App. 1996).  "The benefit conferred must be a direct benefit."  *Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F.Supp. 1439, 1446 (M.D. Fla. 1998).

CGL asserts that the Receiver's claim for unjust enrichment is deficient because the Receiver does not allege that the Offshore Funds conferred any direct benefit upon CGL, or more specifically, it is not alleged that CGL actually received any portion of the Administration Fee payments at issue.  *See, e.g., West Coast Life Ins. Co. v. Life Brokerage Partners LLC*, No. 08-80897-CIV-RYSKAMP, 2009 WL 2957749, at *11 (S.D. Fla. Sept. 9, 2009) (dismissing unjust enrichment claim where plaintiff failed to allege that defendant directly received a benefit from transactions at issue; general allegation that defendant "received compensation for its role in the transactions" was insufficient).

The Receiver responds that it is not necessary for the TAC to allege any direct benefit from the Offshore Funds to CGL.  According to the Receiver, it is sufficient if it alleges, as it does, that CGL dominated and controlled its subsidiaries for the purpose of using these entities to collect the Administration Fees from the Offshore Funds, and that CGL was the party "for whose benefit the transfers were made."  TAC ¶¶ 57, 153-180, 209-210, 248.  Aside from being wholly conclusory, such allegations of indirect benefits are insufficient to support a claim for unjust enrichment.  *West Coast Life Ins. Co*, 2009 WL 2957749, at *11; *Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So.3d 400, 404 (Fla. Dist. Ct. App. 2009)

(affirming dismissal of unjust enrichment claim against parent corporation where plaintiff contracted with and paid subsidiary).  Indeed, the Receiver's argument that CGL dominated and controlled CFS-Curacao and CAC invokes secondary liability concepts.  Because the Receiver fails to allege that CGL received a direct benefit from the Offshore Funds, his claim for unjust enrichment will be dismissed.

3.     <u>Actual Agency Theory of Liability</u>

The Receiver attempts again to assert a claim of secondary or vicarious liability against CGL by alleging that CFS-Curacao and CAC served as CGL's actual agents, as well as CGL's apparent agents.[1]  TAC ¶¶ 31, 186-207.  For actual authority to exist such that the principal is bound, there must be an agency relationship, which requires: (1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent.  *Font v. Stanley Steemer Int'l, Inc.*, 849 So.2d 1214, 1215 (Fla. Dist. Ct. App. 2003); *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003).  "[I]t is the right of control, not actual control or descriptive labels employed by the parties, that determines an agency relationship." *Hickman v. Barclay's Intern. Realty, Inc.*, 5 So.3d 804, 806 (Fla. Dist. Ct. App. 2009)

---

[1]  This theory has already been rejected in an ancillary lawsuit brought by the Receiver against CGL because the Receiver had not pled "acknowledgment" by CGL, "acceptance" by CFS-Curacao, or the control element of actual agency.  *Court Appointed Receiver of Lancer Offshore, Inc. et al. v. The Citco Group Ltd, et al.*, No. 05-60080-CIV-MARRA, DE 191 at 19-21 (Mar. 30, 2011); *see also*, 2008 WL 926512, at *6 (S.D. Fla. Mar. 31, 2008).

(citing *Parker v. Domino's Pizza, Inc.*, 629 So.2d 1026, 1027 (Fla. Dist. Ct. App. 1993)). The Court finds the Complaint does not allege any of these elements between CGL and CFS-Curacao or CAC.

The Receiver responds the Court should find the following allegations support, or at least infer, each of the elements necessary to establish actual agency:

- that William Keunen ("Keunen"), acting as an officer of CFS-USA and a director of CGL, appointed and controlled individuals who were employed by CFS-Curacao and served as directors of the Offshore Funds;

- that CGL announced the resignation of CFS-Curacao as the administrative services agent of the Offshore Funds;

- that CGL approved communications from CFS-Curacao to Lauer; and

- that Keunen directed CFS-Curacao to send out false NAVs.

These allegations do not establish each element of an agency relationship.

In order for a parent company to be liable for its subsidiary's acts under an agency theory, the parent must exercise control to the extent "that the subsidiary has 'no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'" *Whetstone Candy,* 351 F.3d at 1077 n.14 (quoting *MeterLogic, Inc.*, 126 F. Supp. 2d at 1356-57); *In re Florida Cement & Concrete Antitrust Litigation*, 2010 WL 4136306, *25 (S.D. Fla. Oct. 12, 2010). Even if true, the allegations listed above are insufficient to suggest that CFS-Curacao had "no separate corporate interest" and functioned "solely to achieve the purposes of" CGL.

*Id.*; *see also, State v. Am. Tobacco Co.*, 707 So.2d 851, 856 (Fla. Dist. Ct. App. 1998) (finding no agency relationship between parent and subsidiary despite assertion that, among other things, parent adopted policy statements and established goals and objectives of its subsidiaries). As to CAC, the TAC is similarly devoid of allegations of acknowledgment, acceptance, or control. Rather, the Receiver advances the unsupportable proposition that merely because CAC allegedly collected the administrative fees from the Offshore Funds, CAC must have been controlled by the parent company, CGL. Such allegations are clearly insufficient to allege actual agency.

4. **Apparent Agency Theory of Liability**

Apparent authority exists when the principal creates the appearance of an agency relationship. *Ja Dan, Inc. v. L-J Inc.*, 898 F.Supp. 894, 900 (S.D. Fla. 1995). Three elements are required to establish an apparent agency: (a) a representation by CGL; (b) reasonable reliance on that representation by the Offshore Funds; and (c) a change in position by the Offshore Funds in reliance on the representation. *Roessler v. Novak*, 858 So.2d 1158, 1161-62 (Fla. Dist. Ct. App. 2003). The Receiver's apparent agency theory fails because, among other reasons, the TAC does not allege that CGL made any representation to the Offshore Funds that it was authorizing CFS-Curacao to act as its agent to provide administrative services for the Offshore Funds. *See e.g., Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 05-60080-Civ-Marra, 2008 WL 926512, *7 (S.D. Fla. Mar. 31, 2008); *see also, Fojtasek v. NCL*

*(Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009).

In response, the Receiver argues that it is sufficient that he alleges that

- Keunen notified Lancer Management of the decision to have CFS-Curacao resign as administrator;
- Keunen signed the Transition Agreement with Lancer Management;
- Keunen and another CGL director and CGL employee controlled the Offshore Funds' administration, directed the dissemination of the inflated NAVs, responded to investor inquiries, and communicated with the Offshore Funds' auditor.

DE 174 at 15 of 25.  Such facts, even if true, provide no basis for finding detrimental reliance, as is necessary for apparent agency.  Keunen's alleged role in alerting Lancer Management, as opposed to the Offshore Funds, of CFS-Curacao's resignation does not sufficiently allege the elements of an apparent agency between CGL and CFS-Curacao.  Moreover, this argument is belied by the resignation letter which shows, on its face, that CFS-Curacao's resignation was made on its stationary and was signed on behalf of CFS-Curacao.  *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 05-60080-Civ-Marra, Case No. 05-60080, DE110-37, Ex. BB ("Breach of Duty Action").  The letter informed the Offshore Funds' Board of Directors that the decision to resign "reflects our disagreement with the Investment Manager regarding its approach to the valuation of the Fund's portfolio."  *Id*.  Thus, CFS-Curacao's resignation as administrator of the Offshore Funds does not support a

claim of apparent agency, nor does it show a change in position by the Offshore Funds in reliance upon the resignation.

Finally, the Receiver points to allegations that Keunen, CGL's director Stocks, and employee Verhooren, represented to the Offshore Funds that CFS-Curacao had the authority to act on their behalf by controlling the Offshore Funds' administration and directing other acts which are attributed to CFS-Curacao in the delegation of its duties under the Agreements. These assertions are conclusory and contrary to terms of the ASAs and PPM (which identify only CFS-Curacao as the administrator). *See id.*, DE 110, Exs. J-N.

With respect to CAC, the Receiver argues that he satisfies the representation element by alleging that CGL authorized CAC to collect fees. TAC ¶¶ 200-01. What is missing, however, is any allegation that CGL communicated any actual representations to the Offshore Funds that CAC was acting as its agent. The absence of such an allegation warrants dismissal of this claim as well.

Accordingly, the claim that CFS-Curacao and CAC served as CGL's apparent agent will be dismissed with prejudice. *Ashcroft v. Iqbal*, - U.S. --, 129 S.Ct. 1937, 1949 (2009).

### G. "Piercing the Corporate Veil" Theory of Liability

The Receiver also asserts a veil-piercing theory against CGL. TAC ¶¶ 208-216. To state a cognizable claim for piercing the corporate veil, a plaintiff must allege facts that, if taken as true, demonstrate that the subsidiaries are "mere

instrumentalities" of the parent, and that the defendants engaged in "improper conduct" in the formation or use of the subsidiary. *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, No. 05-60055, 2008 WL 926506, *4 (S.D. Fla. Mar. 31, 2008) citing *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1357 (S.D. Fla. 2000); *Aldea Communications, Inc. v. Gardner*, 725 So.2d 456 (Fla. Dist. Ct. App. 1999); *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1119-20 (Fla. 1984).

Under Florida law, the corporate veil may be pierced "in only the most extraordinary cases." *Old West Annuity and Life Ins. Co. v. Apollo Group*, No. 03-cv-354, 2008 WL 2993958, *7 (M.D. Fla. Aug. 1, 2008). Florida courts have adopted a very stringent three-part test, which requires persuasive evidence that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact nonexistent and the shareholders were alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. *Hillsborough Holdings Corp. v. Celotex Corp.*, 166 B.R. 461, 468 (M.D. Fla. 1994); *see also Homelands of DeLeon Springs, Inc,* 190 B.R. 666, 670 (M.D. Fla. 1995); *Hobco, Inc. v. Tallahassee Assoc.*, 807 F.2d 1529, 1534 (11th Cir. 1987); *Lovette v. Happy Hooker II,* 2006 WL 66722, *6 (M.D. Fla. 2006) ("[t]he Florida courts have imposed a strict standard upon those wishing to pierce the corporate veil"); *Mills v. Webster,* 212 B.R. 1006, 1009 (M.D. Fla. 1997)

("[t]hose who seek to pierce the corporate veil ... carry a very heavy burden.") (citing *Hillsborough Holdings,* 166 B.R. at 468).

In the Breach of Duty Action, on a motion to dismiss containing identical allegations to those now under consideration, this Court observed that the Receiver had sufficiently alleged a veil piercing theory of liability. *See Court-Appointed Receiver of Lancer Offshore, Inc. et al. v. Citco Group Ltd., et al.*, 05-60080-Civ-Marra, 2008 WL 926512, *4 (S.D. Fla. Mar. 31, 2008). This statement, however, was *dicta* and was intended to address the fact that the *elements* of piercing the corporate veil had been alleged. It was not a ruling that a valid and supportable veil piercing cause of action had in fact been stated. On closer examination, the Court finds that the TAC's conclusory allegations that CFS-Curacao and CAC were the "alter ego" and "mere instrumentality" of CGL fall short of stating a plausible basis for the claim. *Ashcroft v. Iqbal,* - U.S. --, 129 S.Ct. 1937, 1949 (2009). "[E]ntitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

When considering whether the "mere instrumentality" element has been adequately alleged, the following factors are considered relevant: If (I) the subsidiary has substantially no business or assets; (ii) the parent finances the subsidiary; (iii) the subsidiary has grossly inadequate capital; and (iv) the parent pays

the subsidiary's expenses and salaries.[2]  *See Church of Scientology v. Blackman*, 446 So.2d 190, 193 n.4 (Fla. Dist. Ct. App. 1984).  These factors are demonstrably absent here.  Indeed, the TAC confirms that corporate formalities were observed, including that

- CFS-Curacao had its own Managing Directors (Quilligan and Conroy), who were not directors or officers of CGL.  TAC ¶¶ 39(l), 137, 139;

- CFS-Curacao employed over 100 people, and provided administrative services for over 200 funds from its own offices in Curacao.  TAC ¶¶ 37, 40;

- CFS-Curacao signed the ASAs on its own behalf.  TAC ¶ 133; Ex. J-N to the SAC in the Breach of Duty Action, Case No. 05-60080, DE 110-19 - 110-23;

- The fees for its administrative services were invoiced by, and paid to, CFS-Curacao, which maintained its own bank accounts.  TAC ¶¶ 39(e), 42.

These factual allegations do not indicate that CFS-Curacao was so dominated and controlled by CGL that it lacked a separate corporate existence.  The Court's duty to accept the facts alleged in the complaint as true does not require it to ignore specific factual allegations that negate the underlying theory of liability in favor of general or conclusory allegations.  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007); *Wydler v. Bank of Am., N.A.*, 360 F. Supp. 2d 1302, 1306 n.1 (S.D.

---

[2] Alleging the exact opposite of that required, the TAC alleges that the *parent* (not the subsidiary) does not earn any revenue independent of the revenue generated by its subsidiaries (TAC ¶ 17).

Fla. 2005) (court is not required to credit allegations that are negated by exhibits to complaint). The action of the management of CFS-Curacao to report on significant matters to Keunen, who in turn reported to CGL's executive committee, also fails to indicate that CGL "disregarded corporate formalities." *See Hillsborough Holdings Corp.*, 166 B.R. at 472 ("line-of-business reporting and general oversight" does not nullify corporate form"). Having failed to allege that CFS-Curacao was the "mere instrumentality" of CGL, there is no need to further analyze the other elements of a piercing the corporate veil claim.

The Receiver also asserts that the TAC alleges that CGL used CAC "as a conduit to funnel fees" and "dominated CAC," but the paragraphs of the TAC cited to support those assertions do not even mention CAC. Opp. at 16 (DE 174) citing TAC ¶¶ 133-139, 152-184. The only paragraphs of the TAC that allege that CAC was an "alter ego" of CGL (*see, e.g.,* TAC ¶¶ 53, 57, 191, 212) constitute nothing more than legal conclusions, and thus in no way support a claim that CAC was a "mere instrumentality" of CGL. As with CFS-Curacao, there is no legitimate basis set forth in the TAC for disregarding the separate corporate form of CAC. *Sun Trust Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (the fact that subsidiaries were created to perform specific functions for other related companies did not provide a justification to pierce the corporate veil). Therefore, the Receiver's attempt to hold CGL also liable as the "alter ego" of CAC is rejected. *Court Appointed Receiver*, 2008 WL 926512, at *3, n.3.

**Leave to Amend**

In its previous order, when the Court dismissed the Amended Complaint, the Receiver was specifically given *one more opportunity* to attempt to state the various dismissed claims. After almost four months, the Receiver submitted his significantly expanded 194-page Second Amended Complaint. As the Receiver has been given ample opportunity to state any and all claims, those claims that are dismissed herein, are dismissed with prejudice.

**Conclusion**

For the foregoing reasons, The Citco Group Limited's Motion to Dismiss the Receiver's Third Amended Complaint For Fraudulent Transfer [DE 165] is **GRANTED**. The Citco Group Limited is dismissed from this action.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30th day of March, 2011.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record